# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| EMMANUEL LLAMAS, an individual and California resident, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRUEFIRE, LLC, and TRUEFIRE, INC.<br><br>Defendants. | Case No.: 8:20-cv-00857-WFJ-CPT<br><br>**Plaintiff's Unopposed Motion and Memorandum for Approval of Attorneys' Fees and Expense Award** |

Plaintiff, Emmanuel Llamas ("Plaintiff" or "Class Representative"), respectfully moves this Court to approve Plaintiff's Attorneys' Fees and Expense Award, providing for attorneys' fees, costs, and expenses in the amount of $156,500.00 (the "Motion") pursuant paragraph 10.1 of the Settlement Agreement.[1] After successfully negotiating a Settlement affording benefits to the proposed Settlement Class, Plaintiff requests the Court award to Plaintiff's Counsel attorneys' fees, costs, and expenses of $156,500.00, or approximately 13% of the value of the relief available to the Settlement Class. Importantly, the attorneys' fees, costs, and expenses *are to be paid separately by Defendant*, and the awarded amount does not in any manner affect the amount of relief available to class members.

---

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement and Release, which is being filed concurrently herewith.

The requested relief is demonstrably reasonable and appropriate, and amply supported by the record.[2] The Settlement expressly reflects the parties' arms-length and separately negotiated agreement to the relief sought herein. This factor alone merits great weight and consideration by the Court in ruling on Plaintiff's Motion. Plaintiff's Motion and the relief sought is eminently reasonable under the controlling "percentage of the benefit" fee-assessment method adopted by the Eleventh Circuit in *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768, 774-75 (11th Cir. 1991). ("There is no hard and fast rule mandating a certain percentage[.]"). The Eleventh Circuit, as well as District Courts throughout the Circuit, has repeatedly found such fee applications are appropriate up to 33.33%. *Waters v. Intern. Precious Metals Corp.,* 190 F.3d 1291, 1292–98 (11th Circ. 1999) (33.33% award was appropriate); *Morgan v. Pub. Storage,* 301 F.Supp.3d 1237, 1255 (S.D. Fla. 2016) ("[A] fee award of 33%...is consistent with attorneys' fees awards in federal class actions in [the Eleventh] Circuit."). The requested Attorneys' Fees and Expense Award is approximately 13 percent of the value of the common fund provided by the Settlement, not taking into account the additional costs of notice and administration of the claims—which is also a separate cost and value to the class and Defendants are separately paying.

---

[2] Plaintiff specifically incorporates by reference in this motion Plaintiff's previously filed Motion for Preliminary Approval of the Settlement and for Certification of the Settlement Class (including attachments and declarations) (the "Preliminary Approval Motion"), (Dkt. No. 26), and the Court's approval of same. (Dkt. No. 27).

I. **INTRODUCTION**

On or about February 13, 2020 and March 10, 2020, Defendants disclosed that a credit card scraping attack resulted in the disclosure of the names, addresses, payment card numbers, CVV security codes, and credit card expiration dates ("personally identifiable information" or "PII") of TrueFire customers who purchased online guitar lessons from the TrueFire website between August 3, 2019 and January 14, 2020 (the "Data Breach"). On April 14, 2020, Plaintiff filed his Class Action Complaint against Defendants in the United States District Court for the Middle District of Florida. (Dkt. No. 1). Plaintiff asserted claims for negligence, invasion of privacy, negligence *per se*, unjust enrichment, declaratory judgment, violation of Florida's Deceptive and Unfair Trade Practices Act, violations of California's Unfair Competition Law ("UCL"), and violation of the California Consumer Privacy Act ("CCPA"). (Dkt. No. 1). On May 8, 2020, the parties jointly moved to stay litigation and explore class-wide resolution through mediation. (Doc. No. 15).

On October 4, 2020, the parties filed their Joint Notice of Settlement. (Doc. No. 22). The proposed Settlement was reached following a day-long mediation conducted by Bennett G. Picker, a mediator with significant experience in mediating complex cases, including in data breach class litigation. Defendants will provide the following relief as part of the Settlement: monetary benefits, including nine months of complimentary subscription to TrueFire All Access, reimbursement for time spent remediating the effects of the Data Breach, and CCPA damages for California Sub-

Class Members; non-monetary relief, which includes Defendants' adoption and maintenance of certain enhanced data security practices; and additional class benefits, which include Defendants' agreement to pay, separately from and in addition to all other consideration and relief provided or offered by Defendants as part of the Settlement, the costs of administration of the Settlement and Class Notice, as well as any Attorneys' Fees and Expense Award approved for and awarded to Settlement Class Counsel. The Settlement Agreement offers complete recovery and is an excellent result for the members of the class. The Attorneys' Fees and Expense Award was negotiated only after the parties agreed to all substantive terms of the Settlement. It cannot be contested that at all times the parties' negotiations were adversarial, non-collusive, and conducted at arm's length.

## II. ARGUMENT

### A. The Court Should Afford Substantial Weight to the Settlement on the Attorneys' Fees and Expense Award

The Settlement expressly reflects the parties' arms-length and separately negotiated agreement to the relief sought herein. The Settlement provides that Settlement Class Counsel will apply to the Court for an Attorneys' Fees and Expense Award of up to $156,500.00, representing a modest 13 percent of the monetary value of the more than $1,200,000.00 relief available to Settlement Class Members. *See* SA, ¶ 10. The Settlement (including of course its benefits to the Settlement Class) expressly remains in full force and effect regardless of whether, or to what extent, the Court grants Plaintiff's Attorneys' Fees and Expense Award. *Id.*

The Court must independently evaluate the requested fees, costs, and expenses and is certainly not bound by the parties' agreement in the Settlement regarding fees, costs, and expenses. The Settlement is entitled to great weight, however, because it resulted from adversarial negotiations after the merits were decided. *See, e.g.*, *Strube v. Am. Equity Inv. Life Ins. Co.*, 2006 WL 1232816 at *2 (M.D. Fla. May 5, 2006); *Elkins v. Equitable Life Ins. Co.*, 1998 WL 133741 at *34 (M.D. Fla. Jan. 27, 1998); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001). As has been noted:

> The Court finds that the fee and expense negotiations were conducted at arm's length, only after the parties had reached agreement on all terms of the Settlement. There is no evidence in this case that the Settlement, or the fee and expense agreement, was in any way collusive. Under these circumstances, the Court gives great weight to the negotiated fee in considering the fee and expense request.
>
> Such agreements between plaintiffs and defendants in class actions are encouraged, particularly where the attorneys' fees are negotiated separately and only after all terms of the settlement have been agreed to between the parties. *See Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983) (noting that negotiated, agreed upon attorneys' fees are the "ideal" toward which the parties should strive and stating that "[i]deally, of course, litigants will settle the amount of a fee").

*Manners v. Am. Gen. Life Ins. Co.*, 1999 WL 33581944 at *28 (M.D. Tenn. Aug. 11, 1999) (internal citations omitted); *see also, e.g.*, *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees."). Citing *Manners* with approval, this Court has held:

> The Court finds that the parties' agreement with regard to the payment of fees and expenses was not reached until after a settlement had been reached in principle on its other terms and that the agreement was not the product of

>  collusion or fraud. As a result, the parties' agreement is entitled to substantial weight. *See, e.g.*, *Strube v. Am. Equity Inv. Life Ins. Co.*, 2008 U.S. Dist. LEXIS 28582 at *6–7 (M.D. Fla. May 5, 2006); *Elkins v. Equitable Life Ins. Co.*, 1998 U.S. Dist. LEXIS 1557 (M.D. Fla. Jan. 27, 1998); *Ingram v. Coca–Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001); *Manners v. Am. Gen. Life Ins. Co.*, No. 3–98-0266, 1999 WL 33581944, at *28 (M.D. Tenn. August 11, 1999).

*James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomm. Inc.*, 3:07-CV-598-TJC-MCR, 2012 WL 12952592, at *2 (M.D. Fla. July 30, 2012) (Corrigan, J.) (*Hinson I*); *accord Bastian v. United Servs Automobile Ass'n, et al*, No. 3:13-cv-1454-TCJ-MCR at p. 32 (M.D. Fla. Nov. 11, 2017) (Corrigan, J.) ("[T]he amount of attorneys' fees and costs was separately negotiated from the settlement of the Class Claims, and the award of attorneys' fees and costs does not diminish the amount to be paid to Class Members under the Settlement Agreement").

Practical and prudential considerations warrant judicial deference toward the Settlement in this case. First, there is no one reasonable fee or cost amount mandated by applicable law. The notion of reasonableness encompasses a range of amounts about which there can be a legitimate difference of opinion. As long as the requested fee is one that the Court agrees fall within the range of reasonableness, it should be approved. Further, the competing pressures on the parties served as a substitute for the incentives that normally drive private fee negotiations, ensuring that the agreed upon fee did not constitute a windfall. *See generally In re Continental Illinois Sec. Lit.,* 962 F.2d 566, 572–73 (7th Cir. 1992); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 720 (5th Cir. 1974). The weight afforded to an agreement by the parties regarding fees in this circumstance is especially significant in cases, like this one, in which the fees are

paid by the defendants, rather than the class members. *See, e.g.*, *In re LG/Zenith Rear Projection Television Class Action Litig.*, 2009 WL 455513, at *8–9 (D.N.J. Feb. 18, 2009); *In re Ins. Brokerage Litig.*, 2007 WL 16452303, at *4 (D.N.J. June 5, 2007), *aff'd*, 579 F.3d 241 (3rd Cir. 2009). In this case, the requested Attorneys' Fees and Expense Award takes nothing away from the Settlement Class, who can avail themselves of the Settlement's benefits irrespective of and unhinged from whether or what amount the Court grants in fees, costs and expenses to Settlement Class Counsel. *See* SA, ¶ 10.

### B. The Requested Fee is Clearly Reasonable under the Common Fund Doctrine

Courts have long recognized the common fund doctrine, under which attorneys who create a recovery benefitting a group of people may be awarded their fees and costs from the recovery. *See, e.g.*, *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). In a class case like this one, the Eleventh Circuit has directed that the fee be based upon a percentage of the class benefit. *Camden I,* 946 F.2d at 774–75. Courts have a great deal of discretion in choosing the proper percentage. "There is no hard and fast rule…because the amount of any fee must be determined upon the facts of each case." *Id.* at 774. The court should look at such factors as the time required reaching a settlement, whether there are any substantial objections, the economics of a class action, the criteria set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974), and any other "unique" circumstances. *Camden 1* at 775. In *Camden I,* the Eleventh Circuit recognized a fee award of 50 percent is the upper limit; the majority of fee awards fall between 20 and 30 percent. *Camden I*, 946 F.2d at 774–75.

7

As stated in *Camden I* and followed by this Court, unless specific circumstance suggest otherwise, 25 percent serves as the default "benchmark." *Id.* at 774–75; *accord In re Rayonier Inc. Securities Litig.*, 3:14-cv-1397-J-32JBT, 2017 WL 454852, at *1 (M.D. Fla. October 10, 2017) (Corrigan, J.); *Hinson I*, 3:07-CV-598-TJC-MCR, 2012 WL 12952592, at *2 (Corrigan, J.).

Here, Settlement Class Counsel seek an Attorneys' Fees and Expense Award of $156,500, or 13 percent of the relief available to the Settlement Class, excluding the additional sums which Defendants will pay for the notice cost and cost to administer the settlement, which if considered, would drop the percentage of the value of the settlement under 13 percent—a fee award within the bounds of reasonableness in this Circuit.

For purposes of determining fees under the controlling percentage of the benefit fee-assessment method, the total value of the common fund or class benefit, both monetary and nonmonetary relief, are considered. *Camden I*, 946 F.2d at 771. Said differently, non-monetary relief provided to the class is "part of the settlement pie." *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 628 (11th Cir. 2015) (per curiam), *cert. denied sub nom.*, *Frank v. Poertner*, 136 S. Ct. 1453 (2016). Thus, "[w]hen the non-cash relief can be reliably valued, courts often include the value of this relief in the common fund and award class counsel a percentage of the total fund." *In re: Checking Account Overdraft Litig.*, 1:09-MD-02036-JLK, 2013 WL 11319391, at *13 (S.D. Fla. Aug. 5, 2013);

*Marty v. Anheuser-Busch Companies, LLC*, 13-CV-23656-JJO, 2015 WL 6391185, at *2 (S.D. Fla. Oct. 22, 2015).

Here, the value of the injunctive relief, although not explicitly valued, has inherent monetary value to the Settlement Class Members and essentially all consumers who interact with Defendants. It is designed to ensure the privacy of class members and to prevent future unauthorized access to their sensitive personal information. Defendants agreed to: maintain its current Payment Card Industry compliant status for a period of five (5) years; migrate hosting to Amazon Web Services; engage an outside vendor to perform two (2) rounds of penetration testing; implement password handling, requirements, and encryption in line with industry best practices for a period of five (5) years; implement protections against SQL injection and Cross Site Scripting attacks for a period of five (5) years; implement security measures in how employees access systems and administration tools for a period of five (5) years; enable firewall enhancements for a period of five (5) years; enable enhancements for Payment Card Industry compliance for a period of five (5) years; enable management of AWS infrastructure, network and accounts to be in line with security best practices for a period of five (5) years; and staff two senior personnel resources with job responsibilities including the security and stability of technology for a period of five (5) years. SA ¶¶ 5.6.1–5.6.1.10. Therefore, although not explicitly valued, these important measures do have monetary value, which would push the Attorneys' Fees and Expense Award percentage even lower.

9

### C. The *Camden I* Factors Clearly Support the Requested Fee

The Eleventh Circuit's factors for evaluating the reasonable percentage to award class-action counsel are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases. *Camden I*, 946 F.2d at 772 n. 3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 717–19.

These twelve factors are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *In re Sunbeam*, 176 F.Supp.2d at 1333 (quoting *Camden I*, 946 F.2d at 775). These factors are merely guidelines, and the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Id.* (quoting *Walco Inv., Inc. v. Thenen*, 975 F.Supp. 1468, 1472 (S.D. Fla. 1997)). The *Camden I* factors are discussed below.

10

1. **Time and Labor Involved**

As recounted above, and as set forth in the supporting declarations herewith of John A. Yanchunis (**Exhibit 1**) ("JAY Decl.") and M. Anderson Berry (**Exhibit 2**) ("MAB Decl."), Settlement Class Counsel expended significant effort to achieve the settlement for the Settlement Class, building on their experience in the legal realm of data breaches to bring meaningful resolution to the Settlement Class. Settlement Class Counsel reached a hard-fought settlement after a full-day mediation and numerous informal settlement discussions.

In performing the aforementioned work on behalf of the Settlement Class, Settlement Class Counsel spent over 190.50 hours of attorney and paralegal time without any assurance that the commitment of time and effort to this case would result in the payment of any fee. Settlement Class Counsel should be appropriately compensated for the time and labor invested to obtain this outstanding settlement on behalf of the Settlement Class and should not be punished for its persistence and efficiency in achieving a positive result.

2. **The Novelty and Difficulty of the Questions Involved Required the Skill of a Highly Talented Team of Attorneys**

This factor strongly favors the requested Attorneys' Fees and Expense Award. "Class actions are inherently complex to prosecute because the legal and factual issues are complicated and uncertain in outcome." *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677, 2008 WL 649124, at *15 (S.D. Fla. Jan. 31, 2008). That this dispute presents complex issues as outlined above is evidenced not only by the history of the

11

case, but also by the caliber of lawyers representing the parties. *See Walco*, 975 F.Supp. at 1472 (explaining that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"); *see also Camden I*, 946 F.2d at 772 n.3 (in assessing the quality of representation by class counsel, the court also should consider the quality of their opposing counsel.); *Johnson.*, 488 F.2d at 718; *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992). "The fact that this level of legal talent was available to the Settlement Class is another compelling reason in support of the fee requested…. In the private marketplace, as pointed out by several of Plaintiffs' experts, counsel of exceptional skill commands a significant premium." *In re Checking Account Overdraft Litigation*, 830 F.Supp.2d 1330, 1363 (S.D. Fla. 2011). Here, Settlement Class Counsel enjoy a strong reputation in the area of complex and class action litigation. JAY Decl., ¶¶ 3–10; MAB Decl., ¶¶ 2–7. Settlement Class Counsel have successfully litigated and settled similar cases across the country. JAY Decl. ¶ 11; MAB Decl., ¶¶ 10–12, 15–18.

### 3. The Claims Against Defendants Entailed Considerable Risk

Prosecuting these claims was a significant undertaking. The risks incurred in pursuing the case have been discussed at length above and elsewhere. *See, e.g.*, Plaintiff's Motion for Preliminary Approval. "The simple fact is that there were a larger than usual number of ways that Plaintiffs could have lost this case, and they still managed to achieve a successful settlement. A significant amount of the credit for this must be given to Settlement Class Counsel's strategy choices, effort and legal acumen."

*In re Checking*, 830 F.Supp.2d at 1364. "A court's consideration of this factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk." *In re Sunbeam*, 176 F.Supp.2d at 1336.

Here, Defendants maintained (and still maintain) that the Data Breach was limited in scope and impacted limited information. Accordingly, this factor also militates in favor of awarding Settlement Class Counsel the requested Attorneys' Fees and Expense Award.

### 4. Settlement Class Counsel Assumed Substantial Risk in Pursuing this Action on a Pure Contingency Basis, and Were Precluded from Other Employment

Settlement Class Counsel prosecuted this case entirely on a contingent fee basis. JAY Decl., ¶ 12. As such, they assumed a significant risk of nonpayment or underpayment. Numerous cases recognize the importance of this factor in determining the fee award. "A contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Sunbeam*, 176 F.Supp.2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548); *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler*, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."); *Walters v. Atlanta*, 652 F.Supp. 755, 759 (N.D. Ga. 1985), *modified*, 803 F.2d 1135 (11th Cir. 1986); *York v. Ala. State Bd. of Ed.*, 631 F.Supp. 78, 86 (M.D. Ala. 1986). As Judge King observed:

13

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer… A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548. Settlement Class Counsel spent time litigating this case that they could not spend on other matters. Thus, consideration of this factor also justifies the requested Attorneys' Fees and Expense Award.

### 5. The Requested Attorneys' Fees and Expense Award Comports with Customary Fees and Expense Awarded in Similar Cases

An award of 13 percent of the monetary value of the relief available to Settlement Class Members is well within the benchmark and growing trend in this Circuit.[3] It is also consistent with fee awards in other data breach cases in this Circuit. As one court observed, "[a] fee of 33% is at the market rate of what the Class could

---

[3] *See Waters v. Intern. Precious Metals Corp., supra* at 1292–98 (11th Circ. 1999) (affirming fee award of 33 1/3 % of settlement of $40 million); *Seghroughni v. Advantus Rest, Inc.*, No. 12-2000, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee ... which is one-third of the settlement fund ... is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases."); *Wolff v. Cash 4 Titles*, No. 03-22778, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Morefield v. NoteWorld, LLC*, No. 10-117, 2012 WL 1355573 (S.D. Ga. April 18, 2012) (awarding fees of 33 1/3% of the $1,040,000 settlement fund in addition to expenses); *Atkinson v. Wal-Mart Stores, Inc.*, No. 08-691, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011) (approving class settlement with one-third of the maximum $2,020,000 common fund); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-1317, (Doc. 1557 at 8–10) (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of $100 million); *Gutter v. E.I. DuPont De Nemours & Co.*, No. 95-2152, (Doc. 626 at 7) (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees ($1,201,728.42) after expending significant time and resources on a purely contingent basis under the common fund theory).

have negotiated with counsel in this as a traditional contingency fee arrangement at the outset of the case." *Morgan v. Pub. Storage*, 301 F.Supp.3d 1237, 1255 (S.D. Fla. 2016). Accordingly, Settlement Class Counsel's requested fee and cost award of $156,500.00, or 13 percent of the monetary value of the available relief, is appropriate.

### 6. The Remaining *Camden I* and Other Factors Favor Approval

The remaining *Camden I* factors also support Settlement Class Counsels' fee request. The burdens of this litigation and the results obtained on behalf of Plaintiff and the Settlement Class weigh in favor of the fee requested. The fee request is firmly rooted in "the economics involved in prosecuting a class action." *In re Sunbeam*, 176 F.Supp.2d at 1333. "[P]roper incentives must be maintained to ensure that attorneys of this caliber are available to take on cases of significant public importance like this one." *In re Checking Account Overdraft Litigation*, 830 F.Supp.2d at 1368.

In addition, the fact that the parties negotiated arduously and at length during mediation and subsequent settlement sessions to finalize the Settlement, and as of February 5, 2021, no class member has objected to or requested exclusion from the Settlement or its provision on the Attorneys' Fees and Expense Award, weighs in favor of the fee requested. *See, e.g.*, *Allapattah Services, Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185, 1204 (S.D. Fla. 2006) ("The lack of significant objection from the Class supports the reasonableness of the fee request.") (collecting cases); *Gevaerts v. TD Bank*, No. 14-20744, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015).

### D. A Lodestar Analysis Confirms the Reasonableness of the Request

Under *Camden I*, use of the lodestar analysis is improper in common fund cases. *See In re Checking*, 830 F.Supp.2d at 1362–63 (declining to perform lodestar cross-check because *Camden I* "mandated the exclusive use of the percentage approach in common fund cases" and noting that "courts in this Circuit regularly award fees…without discussing lodestar at all") (internal marks omitted). Still, it has been used as a "cross-check" to the percentage-of-the-fund analysis. *Waters*, 190 F.3d at 1298 ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison."); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F.Supp.2d 1334, 1343 (S.D. Fla. 2007) (noting that "[s]ome courts use the lodestar method as a cross-check of the percentage of the fund approach") (citing *In re Sunbeam*, 176 F.Supp.2d at 1336).

To determine the lodestar amount, the "court must multiply the number of hours reasonably expended by a reasonable hourly rate." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "After the lodestar is determined…the court must next consider the necessity of an adjustment for results obtained." *Id*. at 1302. "If the results obtained were exceptional, then some enhancement of the lodestar might be called for." *Id*. (citing *Pennsylvania v. Delaware*

16

*Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), *supplemented*, 483 U.S. 711 (1987)). "Even if the results obtained are exceptional, no enhancement is permissible unless there is specific evidence in the record to show that the quality of representation was superior to that which one would reasonably expect in light of the rates claimed." *Id*. (citing *Blum v. Stenson*, 465 U.S. 886, 899 (1984)). "This is because the reasonable hourly rate already should reflect the skill demonstrated by the advocate." *Id*. "[E]nhancement may be appropriate if there is a risk of non-recovery of a fee in the case," such as in a contingent fee arrangement. *Id*.

Settlement Class Counsel's time and hourly rates entered by attorneys and the professional staff of the firms in this matter are summarized in the declarations of John A. Yanchunis and M. Anderson Berry. JAY Decl., ¶ 2; MAC Decl., ¶¶ 16–17. As of February 8, 2021, Settlement Class Counsel have expended 190.5 hours, and at their respective hourly rates, the lodestar is $117,074.20. Settlement Class Counsel also incurred Expenses in the amount of $6,761.92. JAY Decl., ¶ 14; MAB Decl., ¶ 17. Of course, Settlement Class Counsel will continue to invest significant time and expenses in this matter through the settlement administration process, to prepare for and attend the final hearing to obtain final approval, and to defend the Court's Final Judgment on any appeals. JAY Decl., ¶¶ 11, 15. The additional time will certainly bring the total loadstar and expenses closer to if not above $156,500.00. JAY Decl. ¶¶ 11–15.

Had there been no common fund in the proposed Settlement and attorneys' fees were determined based solely on the lodestar method, Settlement Class Counsel would

17

have sought a substantial multiplier to apply to their lodestar for reasons earlier discussed, in particular, the result achieved for the Class, the complexity of the dispute and issues Settlement Class Counsel had to skillfully address, and the contingent nature of Settlement Class Counsel's fee arrangement. *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 04-3066, 2012 WL 12540344, at *5 (N.D. Ga. Oct. 26, 2012) (applying a multiplier of four times lodestar to "reflect such considerations as (1) the contingent nature of the fee; (2) the risk of the case (*i.e.*, the likelihood of success viewed at the tune of the filing); (3) the quality of representation; and (4) the result achieved," and surveying cases applying multipliers of approximately 4 to 9 times lodestar). This would further substantiate the fees requested under the percentage-of-the-fund approach and the Settlement.

## III.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the Attorneys' Fees and Expense Award in the amount of $156,500.00.

Local Rule 3.01(g) Certification

In accord with Local Rule 3.01(g), Plaintiff conferred with Defendants regarding the relief requested in this motion and Defendants do not object to the relief sought herein but only in connection with the proposed settlement of this case. In the event the Settlement is not approved, the Settlement Agreement is terminated for any reason, or the Effective Date, as defined in the Settlement Agreement, does not occur

for any reason, Defendants reserve all defenses in the case and specifically reserve the right to object to this case proceeding on a class-wide basis for any purpose.

Dated: February 8, 2021                                 Respectfully submitted,

/s/ John A. Yanchunis

JOHN A. YANCHUNIS
jyanchunis@ForThePeople.com
RYAN J. MCGEE
rmcgee@ForThePeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

M. ANDERSON BERRY (*Pro Hac Vice*)
aberry@justice4you.com
LESLIE GUILLON (*Pro Hac Vice*)
lguillon@justice4you.com
**CLAYEO C. ARNOLD**
**A PROFESSIONAL LAW**
**CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829

*Attorneys for Plaintiff and the Proposed Classes*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 8, 2021, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *John A. Yanchunis*