UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| EMMANUEL LLAMAS, an individual and California resident, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRUEFIRE, LLC, and TRUEFIRE, INC.<br><br>Defendants. | Case No.: 8:20-cv-00857-WFJ-CPT<br><br>**Plaintiff's Unopposed Motion and Memorandum in Support of Final Approval of Class Action Settlement and Certification of Settlement Class** |

Plaintiff, Emmanuel Llamas ("Plaintiff"), respectfully moves for final approval of the Settlement and certification of the Settlement Class.[1] In so moving, Plaintiff respectfully requests the Court: 1) approve the Settlement Agreement as fair, reasonable, and adequate under Rule 23(e); 2) finally certify the Settlement Class under Rule 23(b)(2) and (b)(3); 3) finally appoint Plaintiff as Class Representative for the Settlement Class; 4) finally appoint as Settlement Class Counsel John A. Yanchunis, Ryan J. McGee, and M. Anderson Berry; 5) find the Notice Program as implemented satisfies Rule 23 and due process; 6) finally appoint Angeion Group ("Angeion") as the Settlement Administrator; 7) grant Settlement Class Counsel's Motion for Attorneys' Fees and Costs in the amount of $156,500.00; and 8) grant any further relief the Court deems just and proper.

---

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement and Release, which was filed at Dkt. No. 26-1.

## I.   INTRODUCTION

In February and March 2020, Defendants disclosed that a credit card scraping attack resulted in the disclosure of the names, addresses, payment card numbers, CVV security codes, and credit card expiration dates ("PII") of customers who purchased online guitar lessons from the TrueFire website between August 3, 2019 and January 14, 2020 (the "Data Breach"). On April 14, 2020, Plaintiff filed his Class Action Complaint against Defendants. (Dkt. No. 1). After a stay of the litigation, on December 4, 2020, following mediation and formalizing the Settlement, Plaintiff

moved for preliminary approval of the class action settlement and certification of a settlement class. (Dkt. No. 26). December 11, 2020, this Court granted preliminary approval of the Settlement and approved the Notice Program. (Dkt. No. 27).

The proposed Settlement was reached following a day-long mediation conducted by Bennett G. Picker, a mediator with significant experience in mediating complex cases, including data breach class litigation. Pursuant to the terms of the Stipulation and Agreement of Settlement, which are set forth fully below, and previously-filed at Dkt. No. 26-1 ("Settlement Agreement" or "SA"), the Settlement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against Defendants and the Released Parties relating to the Data Breach, by and on behalf of the Plaintiff and Settlement Class Members, and any other such actions by and on behalf of any other consumers and putative classes of consumers originating, or that may originate, in jurisdictions in the United States against Defendants relating to the Data Breach.

2

Defendants will provide the following relief as part of the Settlement: monetary benefits, including nine months of complimentary subscription to TrueFire All Access, reimbursement for time spent remediating the effects of the Data Breach, and CCPA damages for California Sub-Class Members; non-monetary relief, which includes Defendants' adoption and maintenance of certain enhanced data security practices; and additional class benefits, which include Defendants' agreement to pay, separately from and in addition to all other consideration and relief provided or offered by Defendants as part of the Settlement, the costs of administration of the Settlement and Class Notice, as well as any Fee and Expense Award approved for and awarded to Settlement Class Counsel. The Settlement Agreement offers complete recovery and is an excellent result for the members of the class.

## A. SUMMARY OF THE LITIGATION

This class action case was filed against Defendants on April 14, 2020 following Defendants' alleged unauthorized disclosure of Plaintiff's and Class Members' PII to unauthorized third parties. As a result of Defendants' alleged failure to implement and follow industry standard security practices, Plaintiff's and Class Members' PII was accessed by unauthorized third parties. (Dkt. No. 1, ¶ 2). Plaintiff, Emmanuel Llamas, asserted claims for negligence, invasion of privacy, negligence *per se*, unjust enrichment, declaratory judgment, violation of Florida's Deceptive and Unfair Trade Practices Act, violations of California's Unfair Competition Law, and violation of the California Consumer Privacy Act (the "CCPA"). (Dkt. No. 1, ¶¶ 68–165).

On May 8, 2020, the parties moved to stay this litigation and explore class-wide

resolution through mediation. (Dkt. No. 15). Through an informal exchange of information leading up to the mediation, as well as the parties' breadth of experience litigating data breaches nationwide and in this District, the parties were informed of the pertinent information necessary to engage in and conduct a meaningful mediation to bring resolution to Settlement Class Members.

## B. INFORMATION ABOUT THE SETTLEMENT

The parties agreed on and retained mediator Bennett G. Picker and briefed their respective positions on the facts, claims, defenses, and assessments of the risk of litigation. The parties also submitted a draft settlement term sheet that was prepared by Plaintiff and his counsel, and that was then used at the mediation. Declaration of John A. Yanchunis, ¶ 15 ("Yanchunis Decl.")

On September 16, 2020, the parties participated in a full-day mediation session with Mr. Picker. Yanchunis Decl., ¶ 16. The negotiations were hard-fought throughout and the settlement process was conducted at arm's length. *Id.* Through the negotiations, Mr. Picker was able to assist the parties in reaching an agreement on the substantive terms of the Settlement. *Id.* The subject of attorneys' fees, costs, and expenses, subject to Court approval, was negotiated only after all substantive terms of the Settlement were agreed upon by the parties. *Id.*, ¶ 21.

Based on Settlement Class Counsel's independent investigation of the relevant facts and applicable law, experience with many other data breach cases, including data breach cases in this District, and the information provided by Defendants, Settlement Class Counsel has determined that the Settlement is fair, reasonable, adequate, and in

the best interest of the Settlement Class. Consequently, the parties worked together to prepare a comprehensive set of settlement documents, which are embodied in the Settlement Agreement. (Dkt. No. 26-1).

## C. THE TERMS OF THE SETTLEMENT AGREEMENT

### 1. The Settlement Class

The proposed Settlement Class is defined as:

All persons residing in the United States whose personally identifiable information was compromised as a result of the Data Breach first announced by TrueFire on February 13, 2020 (the "National Class"). SA, ¶ 4.1(a).

All persons residing in California whose personally identifiable information was compromised in the Data Breach first announced by TrueFire on February 13, 2020 (the "California Sub-class"). SA, ¶ 4.1(b).

Excluded from the Settlement Class is the judge presiding over this matter and any members of her judicial staff, the officers and directors of either of the Defendants, and persons who timely and validly request exclusion from the Settlement Class.

### 2. The Settlement Benefits

#### a. Monetary Remedies

Under the Settlement, subject to its terms and conditions and subject to this Court's final approval, Settlement Class Members are eligible to receive the following monetary benefits:

1. Nine (9) months of complimentary TrueFire All Access Subscription Offering;
2. Reimbursement of Time Spent Remediating Payment Card Issues; and
3. $50.00 per California Sub-class Member for damages under the CCPA.

SA, ¶¶ 5.1–5.3.2.

The aggregate amount of total potential monetary claims under the Settlement Agreement for the Nationwide Class exceeds $1,200,000.00. First, $881,770.05 of

value in the form of nine months of TrueFire All Access Subscription Offering is being made available to all Settlement Class Members. SA ¶¶ 5.1–5.1.1. Also, each of the Settlement Class Members could, if they qualify, recover up to $60.00 in reimbursement time, totaling $294,660.00. SA ¶¶ 5.2–5.2.4. Further, the California Sub-class Members are also eligible to recover $50.00 per member, with 733 members, totaling approximately $36,650.00. SA ¶¶ 5.3–5.3.2. Finally, subject to Court approval, Defendants have agreed separately to pay the costs associated with Notice and Settlement Administration. SA ¶ 5.5. Defendants have also agreed separately to pay the requested amount of attorneys' fees, costs, and expenses, which Plaintiff moved for on February 8, 2021, in the amount of $156,500.00. SA ¶ 10.1; Dkt. No. 29. Following expiration of the Election Deadline and after the Settlement Administrator determines which Claims are valid and permissible, and the amounts properly payable for such Claims, Defendants shall provide to the Settlement Administrator all funds necessary to pay the valid and permissible claims.

### b. Injunctive Relief

In addition to the monetary compensation provided to class members by the Settlement Agreement and to ensure that the information of Settlement Class Members is secure from future cyber threats, Defendants have implemented and agree to maintain enhanced security measures for five years following approval of the Settlement, including: (1) maintaining current Payment Card Industry compliant status; (2) migrating hosting to Amazon Web Services ("AWS"); (3) engaging an outside vendor to perform two rounds of penetration testing; (4) implementing

6

password handling, requirements, and encryption in line with industry best practices; (5) implementing protections against SQL injection and Cross Site Scripting attacks; (6) implementing security measures in how employees access systems and administration tools; (7) enabling firewall enhancements; (8) enabling enhancements for Payment Card Industry compliance; (9) enabling management of AWS infrastructure, network and accounts to be in line with security best practices; and (10) staff two senior personnel resources with job responsibilities including the security and stability of Defendants' technology. SA ¶¶ 5.6–5.6.10. Thus, through the opportunity to receive monetary payments from Defendants for time spent addressing and remediating the Data Breach, CCPA payments for California Sub-class Members, the ability to enroll in nine months of TrueFire All Access, and Defendants' enhanced security posture resulting from this litigation, Settlement Class Members benefit by the Settlement Agreement in a substantive and substantially meaningful way.

### 3. Notice Program

On December 11, 2020, the Court appointed Angeion as the Settlement Administrator. (Dkt. No. 27). On December 18, 2020, Angeion commenced the Notice Program. Declaration of Steven Weisbrot, ¶¶ 4–12 ("Weisbrot Decl."). The Notice Program included de-duplication of the 4,911 accounts to determine that 4,857 unique Settlement Class Members existed, and direct email notice was sent to these 4,857 Settlement Class Members. Of the 4,857 emails, 314 were undeliverable due to either invalid email addresses or hard bounces. Weisbrot Decl., ¶¶ 5–6. Direct notice to those 314 Settlement Class Members was achieved through USPS first-class mail.

Weisbrot Decl., ¶ 7. Angeion also established the Settlement Website on January 22, 2021, which has had 869 unique visitors and 1,825 page views, and a toll-free telephone support line that received 27 calls totaling 126 minutes. Weisbrot Decl., ¶¶ 9–12. Defendants agreed to pay all costs associated with providing Class Notice and Settlement Administration, including disbursement of the Settlement benefits. Such payment is in addition to and in no way affects the amount of Class Settlement consideration available to Settlement Class Members. SA ¶ 5.5.

### 4. Exclusion and Objection Procedures

The Notice Program advised Settlement Class Members of their rights to object or opt out of the Settlement and direct Settlement Class Members to the Settlement Website for more information. The Long-Form Notice (available on the Settlement Website) provided instructions for Settlement Class Members to exclude themselves from the Settlement Class. The Long-Form Notice also provided instructions for Settlement Class Members to object to the Settlement and/or to Settlement Class Counsel's application for attorneys' fees, costs, and expenses. SA, ¶¶ 8.1–8.10.2. Since the expiration of the exclusion and objection deadline of March 11, 2021, there were no objections and only one exclusion. Weisbrot Decl., ¶ 14.

### 5. Attorneys' Fees, Costs, and Expenses

Defendants agreed to pay Plaintiff's Attorneys' Fee and Expense Award, separate and apart from the Settlement Fund. On February 8, 2021, Settlement Class Counsel moved for the Attorneys' Fees and Expense Award in the amount of $156,500.00, which Defendants did not oppose. (Dkt. No. 29). Plaintiff's approval of

the Settlement was not conditioned in any manner on the approval of that motion.

### 6. Release of Claims

Under the Settlement, each Settlement Class Member will be deemed to have released any legal claims that may have arisen from or relate to the facts alleged in the Class Action Complaint, as specified in Section 9 of the Settlement. SA, ¶ 9.1.

## II. ARGUMENT

### A. Certification of the Settlement Class is Appropriate

As this Court has already held, the Settlement Class meets the requirements for certification for settlement purposes under Rule 23. (Dkt. No. 27). Specifically, the Settlement Class meets numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a), and the predominance requirement of Rule 23(b). Fed. R. Civ. P. 23(a)(1)–(4), (b)(3); *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Additionally, where (as in this case) certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

A court in a sister district has stated that "[a] class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" *Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 WL 10167232, at *1 (S.D. Fla. Oct. 7, 2013) (quoting *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005)). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. This case meets all of the Rule 23(a) and (b)(3) prerequisites, and for the reasons set forth below, certification is appropriate.

### 1. The Proposed Settlement Class Meets the Requirements of Rule 23(a).

### a. Numerosity.

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,' Fed. R. Civ. P. 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation omitted). Courts require only that plaintiffs provide "some evidence of the number of members in the purported class, or at least a reasonable estimate of that number." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997). Here, Defendants identified approximately 4,911 people in the Settlement Class, easily satisfying numerosity.

### b. Commonality.

The second prerequisite to class certification is commonality, which "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation omitted). The commonality requirement presents a low hurdle, as commonality does not require that all questions of law and fact raised be common. *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 514 (S.D. Fla. 2013). "[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Dukes*, 131 S. Ct. at 2556. Rule 23(a)(2) requires "only that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 669 (S.D. Fla. 2014) (internal citations omitted); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009); *James D. Hinson Elec. Contr. Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 642 (M.D. Fla. 2011) (citing *Williams*, 568 F.3d at 1355).

Here, the commonality requirement of Rule 23(a)(2) is readily satisfied. In this case, the Settlement Class Members are joined by the common questions of law and fact that arise from the same Data Breach. *Manno*, 289 F.R.D. at 685. Specifically, Plaintiff has alleged the following questions of fact and law are common to the Class:

> Whether and when Defendants actually learned of the Breach and whether their response was adequate; Whether Defendants owed a duty to the Classes to exercise due care in collecting, storing, safeguarding and/or obtaining their PII; Whether Defendants breached that duty; Whether Defendants implemented and maintained reasonable security procedures and practices appropriate to the nature of storing

Plaintiff's and Class Members' PII; Whether Defendants acted negligently in connection with the monitoring and/or protecting of Plaintiff's and Class Members' PII; Whether Defendants knew or should have known that they did not employ reasonable measures to keep Plaintiff's and Class Members' PII secure and prevent loss or misuse of that PII; Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the Breach to occur; Whether Defendants caused Plaintiff and Class Members damages; Whether Defendants violated the law by failing to promptly notify Class Members that their PII had been compromised; Whether Plaintiff and the other Class Members are entitled to credit monitoring and other monetary relief; Whether Defendants violated Florida's Deceptive and Unfair Trade Practices Act (Florida Statute § 501.203, *et seq*.); Whether Defendants violated the California Unfair Competition Law (Business & Professions Code § 17200, *et seq*.);Whether Defendants violated the California Consumer Privacy Act (Cal. Civ. Code § 1798.100, et seq. (§ 1798.150(a)).

These common issues all center on Defendants' conduct, satisfying the commonality requirement. *See, e.g.*, *In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in Countrywide's databases at the time of the data breach"); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F.Supp.2d 1040, 1059 (S.D. Tex. 2012) ("Answering the factual and legal questions about Heartland's conduct will assist in reaching classwide resolution.").

### c. Typicality.

The next prerequisite to certification, typicality, "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the typicality nor the

commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification."). Simply put, when the same course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, the typicality requirement is satisfied for the same reasons that Plaintiff's claims meet the commonality requirement. Specifically, Plaintiff's claims are typical of those of other Settlement Class Members because they arise from the Data Breach. They are also based on the same legal theory, i.e., that Defendants had a legal duty to protect Plaintiff's and Settlement Class Members' PII. Because there is a "sufficient nexus" between the Plaintiff's claims and the claims of Settlement Class Members, the typicality requirement is satisfied. *Hines*, 334 F.3d at 1256.

### d. Adequacy.

Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 NEWBERG ON CLASS ACTIONS § 3:21. Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *Amchem*, 521 U.S. at 625–26. Plaintiff is a member of the Settlement Class and does not possess any interests antagonistic to the Settlement Class. He provided his PII to Defendants and alleges his PII was compromised as a result of the Data Breach, as the PII of the Settlement Class was also allegedly compromised. Indeed, Plaintiff's claims coincide identically with the claims of the Settlement Class, and Plaintiff and the Settlement Class desire the same

outcome of this litigation. Because of this, Plaintiff has prosecuted this case for the benefit of all Settlement Class Members.

Settlement Class Counsel submitted declarations demonstrating their skills and experience in class action litigation, handling cases around the country and in this District. Yanchunis Decl., ¶¶ 3–6. Because Plaintiff and his counsel have devoted substantive time and resources to this litigation, the adequacy requirement is satisfied.

### 2. The Predominance and Superiority Requirements of Rule 23(b)(3) Are Met.

In addition to meeting the prerequisites of Rule 23(a), the proposed Settlement Class must also meet one of the three requirements of Rule 23(b). *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 660 (S.D. Fla. 2011). Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that: (1) questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "'It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions.'" *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004)). The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan*, 222 F.R.D. at 700. The Settlement Class readily meets these requirements.

### a. Predominance.

Rule 23(b)(3)'s predominance requirement focuses primarily on whether a defendant's liability is common enough to be resolved on a class basis, *see Dukes*, 131 S. Ct. at 2551–57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623. Common issues of fact and law predominate in a case "if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (citing *Klay*, 382 F.3d at 1255); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1179 (11th Cir. 2010) ("[t]he relevant inquiry [is] whether questions of liability to the class . . . predominate over . . . individual issues relating to damages. . . ."). Predominance does not require that all questions of law or fact be common, but rather, that a significant aspect of the case "can be resolved for all Settlement Class Members of the class in a single adjudication." *In re Checking*, 275 F.R.D. at 660. "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, 123–124 (3d ed. 2005)).

Common issues readily predominate here because the central liability question in this case—whether Defendants failed to safeguard Plaintiff's PII, like that of every

other Class member—can be established through generalized evidence. *See Klay*, 382 F.3d at 1264 ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met."). Several case-dispositive questions could be resolved identically for all members of the Settlement Class, such as whether Defendants had a duty to exercise reasonable care in safeguarding, securing, and protecting the PII of Plaintiff and Settlement Class Members and whether Defendants breached that duty. The many common questions of fact and law that arise from Defendants' conduct predominate over any individualized issues. Other courts have recognized that these types of common issues arising from a data breach predominate over individualized issues. *See, e.g., Countrywide*, 2009 WL 5184352, at *6–7 (finding predominance where proof would focus on data breach defendant's conduct both before and during the theft of class members' personal information); *Heartland*, 851 F. Supp. 2d at 1059 (finding predominance where "several common questions of law and fact ar[ose] from a central issue: Heartland's conduct before, during, and following the data breach, and the resulting injury to each class member from that conduct").

Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only

16

certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

### b. Superiority.

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. As courts have historically noted, "[t]he class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability." *In re Checking*, 286 F.R.D. at 659. At its most basic, "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'" *Agan*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)). Factors the Court may consider are: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class. As noted earlier, any perceived difficulties managing the Settlement Class need not be considered in this settlement context. *Amchem*, 521 U.S. at 620; *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 302–03 (3d Cir. 2011) (holding that potential variances in different states' laws would not defeat certification of a settlement-only class because trial management concerns were not implicated by a settlement-only class, as opposed to a litigated class). A class action settlement is

17

superior to other means of resolution because a settlement affording Settlement Class Members an opportunity to receive compensation benefits *all* parties.

Here, resolution of numerous claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Indeed, absent class treatment in the instant case, each Settlement Class Member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Moreover, there is no indication that Settlement Class Members have an interest in individual litigation or an incentive to pursue their claims individually, given the amount of damages likely to be recovered, relative to the resources required to prosecute such an action. *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004) (class actions are "particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually"). Additionally, the proposed Settlement will give the parties the benefit of finality, and because this case is pending final approval, the Court need not be concerned with issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case would present intractable management problems.").

The Court respectfully should certify the Settlement Class, as the superiority requirement is satisfied, along with all other Rule 23 requirements.

**B.  Settlement Class Counsel Should Be Finally Appointed.**

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed above, and as fully explained in Mr. Yanchunis' Declaration, Settlement Class Counsel have extensive experience prosecuting similar class actions and other complex litigation. Further, Settlement Class Counsel have diligently investigated and prosecuted the claims in this matter, have dedicated substantive resources to the investigation and litigation of those claims, and have successfully negotiated the Settlement of this matter to the benefit of Plaintiff and the Settlement Class. *Id.* Accordingly, the Court should finally appoint as Settlement Class Counsel John A. Yanchunis, Ryan J. McGee, and M. Anderson Berry.

**C. The Settlement Is Fair, Reasonable, and Adequate.**

"Settlement of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice." *Wilson v. EverBank*, No. 14-CIV-22264, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016). "For these reasons, 'there exists an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Id.* (quoting *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 114 (S.D. Fla.

2005)). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *Pierre-Val v. Buccaneers Ltd. Partn.*, No. 8:14-CV-01182, 2015 WL 3776918, at *1 (M.D. Fla. June 17, 2015) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977).

In deciding whether to approve the Settlement, the Court should analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Lieberman*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Wilson*, 2016 WL 457011, at *6 (quoting *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. App'x 429, 434 (11th Cir. 2012). The factors for analyzing the fairness, reasonableness, and adequacy of a class settlement under Rule 23(e) include:

1. the existence of fraud or collusion behind the settlement;
2. the complexity, expense, and likely duration of the litigation;
3. the stage of the proceedings and the amount of discovery completed;
4. the probability of the Class Representative's success on the merits;
5. the range of possible recovery; and
6. the opinions of the class counsel, class representative, and the substance and amount of opposition to the settlement.

*Montoya v. PNC Bank, N.A.*, No. 14-20474, 2016 WL 1529902, at *8 (S.D. Fla. April 13, 2016) (citing *Leverso*, 18 F.3d at 1530, n.6; *Bennett*, 737 F.2d at 986). The analysis of these factors, set forth below, shows this Settlement to be eminently fair, adequate, and reasonable.

## 1.  The Settlement is Not the Product of Fraud or Collusion

"Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Wilson*, 2016 WL 457011, at *6 (quoting *Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014)). In such cases, "[t]here is a presumption of good faith." *Id.* The Settlement was the result of intensive, arms-length negotiations between experienced attorneys familiar with class action litigation and the legal and factual issues involved in this case. The Settlement was reached only after mediation before an experienced neutral. Yanchunis Decl., ¶ 15. *See, e.g.*, *Blessing v. Sirius XM Radio, Inc.*, 507 F. App'x. 1, 3 (2nd Cir. 2012); *Enter. Energy Corp. v. Columbia Gas Tran. Corp.*, 137 F.R.D. 240, 244 (S.D. Ohio 1991). Where "no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement. . . counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 633, 703 (M.D. Fla. 2005). Here, Settlement Class Counsel are in favor of and recommend this Settlement.

### 2. The Complexity, Expense, and Duration of Further Litigation, as well as the Probability of Success at Trial, Supports Final Approval

The claims and defenses in this case are complex and vigorously contested. Continued litigation will involve substantial delay and expense, which further counsels in favor of final approval. Even if Plaintiff succeeds in obtaining a contested class certification, Plaintiff and the Class would still inevitably face a challenge to that certification, as well as summary judgment, a trial on the merits, and a post-judgment appeal. The uncertainties and delays from this process would be significant. Complex

litigation—like the instant case—"can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *Wilson*, 2016 WL 457011, at *7 (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992)). As a result, non-settlement-based recovery would require additional complex, protracted, and expensive litigation.

In addition, "[t]he court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, [i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma*, 406 F. Supp. 2d at 1323 (internal citations and marks omitted). Because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992), there can be no doubt about the adequacy of the present Settlement, which provides meaningful benefits to the Class. Considering the uncertainties inherent in continued litigation, including trial and an appeal, along with the delays and complexities inherent in this type of litigation, settlement is in the best interest of Plaintiff and the Settlement Class. *Lipuma*, 406 F. Supp. 2d at 1324.

### 3. The Factual Record was Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment

The stage of proceedings at which settlement is reached is "evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Wilson*, 2016

WL 457011, at *7 (quoting *Lipuma*, 406 F. Supp. 2d at 1324). This Settlement resulted from arms-length negotiations, supervised by an experience mediator, and informed by the parties' respective experience in class action data breach litigation and their investigations. The Settlement was supervised by an experienced mediator who oversaw all stages of the settlement negotiations. The parties were well informed and understood the strengths and weaknesses of their respective positions.

### 4. The Benefits Provided by the Settlement are Fair, Adequate, and Reasonable

In determining whether a settlement is fair in light of the potential range of recovery, "the focus is on the possible recovery at trial." *Wilson*, 2016 WL 457011, at *7 (quoting *Saccoccio*, 297 F.R.D. at 693). "[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens*, 118 F.R.D. at 542. Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id.* This is because a settlement must be evaluated "in light of the attendant risks with litigation." *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 64 (S.D.N.Y. 2003); *see also Bennett*, 737 F.2d at 986 ("[C]ompromise is the essence of settlement."). Thus, courts regularly find settlements to be fair where "[p]laintiffs have not received the optimal relief." *Warren v. City of Tampa*, 693 F. Supp. 1051, 1059 (M.D. Fla. 1988); *see also, e.g.*, *Great Neck Capital Appreciation Investment P'ship, L.P. v. PriceWaterHouseCoopers, L.L.P.*, 212 F.R.D. 400, 409–10 (E.D. Wis. 2002) ("The mere possibility that the class might receive more if the case were fully litigated is not a good

reason for disapproving the settlement."). The benefits available here compare favorably to what Settlement Class Members could recover if successful at trial. Specifically, without limitation, Settlement Class Members are entitled to 9 months of TrueFire All Access. Additionally, Settlement Class Members are entitled to seek compensation for time spent, and California Subclass Members are entitled to $50 for liquidated damages under the CCPA.

### 5. The Opinions of Class Counsel, the Class Representative, and Absent Class Members Favor Final Approval

In addition to the factors discussed, the Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren*, 693 F. Supp. at 1060; *see In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312–13 (N.D. Ga. 1993 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).

> This Court, like others, considers the reaction of the class, as well as the reaction of the various state attorney generals and regulators, to the proposed settlement to be an important indicator as to its reasonableness and fairness. Obviously, a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable.

*Howard Braynen, et al. v. Nationstar Mortgage, LLC, et al.*, 2015 WL 6872519 (S.D. Fla. 2015) (internal citations and quotation marks omitted).

Here, Class Counsel wholeheartedly endorses the Settlement. Yanchunis Decl., ¶¶ 16–24. Additionally, the reaction of the Settlement Class to the Settlement here has

been extremely positive. There have been 517 claims, no objections, and one opt-out received. Weisbrot Decl., ¶ 13. Likewise, at present, no objections were received in response to the CAFA notices sent to attorneys general. These are powerful indicia that the Settlement is fair, reasonable, and adequate and deserves final approval. *See Hall v. Bank of America, N.A.*, No. 1:12-cv-22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (noting where objections from settlement class members "equates to less than .0016% of the class" and "not a single state attorney general or regulator submitted an objection," "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness"); *Hamilton v. SunTrust Mortg. Inc.,* No. 13-60749, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) (where "not a single state attorney general or regulator submitted an objection," and there were few objections to the class settlement, "such facts are overwhelming support for the settlement").

## III.   CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court enter an order: 1) approve the Settlement Agreement as fair, reasonable, and adequate under FRCP 23(e); 2) finally certify the Settlement Class under FRCP 23(b)(2) and (b)(3); 3) finally appoint Plaintiff as Class Representative for the Settlement Class; 4) finally appoint as Settlement Class Counsel John A. Yanchunis, Ryan J. McGee, and M. Anderson Berry; 5) find the Notice Program as implemented satisfies FRCP 23 and due process; 6) finally appoint Angeion Group as the Settlement Administrator; 7) grant Settlement Class Counsel's Motion for Attorneys' Fees and Costs in the amount of $156,500.00; and 8) grant any further relief the Court deems just and proper.

Local Rule 3.01(g) Certification

In accord with Local Rule 3.01(g), Plaintiff conferred with Defendants regarding the relief requested in this motion and Defendants do not object to the relief sought herein but only in connection with the proposed settlement of this case. In the event the Settlement is not approved, the Settlement Agreement is terminated for any reason, or the Effective Date, as defined in the Settlement Agreement, does not occur for any reason, Defendants reserve all defenses in the case and specifically reserve the right to object to this case proceeding on a class-wide basis for any purpose.

Dated: April 30, 2021

Respectfully submitted,

*/s/ John A. Yanchunis*
JOHN A. YANCHUNIS
jyanchunis@ForThePeople.com
RYAN J. MCGEE
rmcgee@ForThePeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

M. ANDERSON BERRY (*Pro Hac Vice*)
aberry@justice4you.com
LESLIE GUILLON (*Pro Hac Vice*)
lguillon@justice4you.com
**CLAYEO C. ARNOLD**
**A PROFESSIONAL LAW**
**CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829

*Attorneys for Plaintiff and the Proposed Classes*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 30, 2021, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ John A. Yanchunis*