UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| EMMANUEL LLAMAS, an individual and California resident, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRUEFIRE, LLC, and TRUEFIRE, INC.<br><br>Defendants. | Case No.: 8:20-cv-00857-WFJ-CPT |

I, John A. Yanchunis, declare pursuant to 28 U.S.C. § 1746, as follows:

1. I have been licensed to practice law in the state of Florida since 1981.

2. I am one of the attorneys for the Plaintiff and the proposed Settlement Class in this case. I submit this declaration in support of the Motion for Final Approval of the Class Action Settlement. The facts herein stated are true of my own personal knowledge, and if called to testify to such facts, I could and would do so competently.

3. I lead the Class Action Department at Morgan & Morgan. Morgan & Morgan is the largest Plaintiff's, contingency-only law firm in the country, with approximately 700 lawyers in more than 50 offices throughout the United States. Its depth as a trial firm, and its self-funded financial resources, allow it to undertake the largest and most significant cases throughout the country.

4. My practice—which began after completing a two-year clerkship with United States District Judge Carl O. Bue, Jr., Southern District of Texas, Houston Division—has concentrated on complex litigation and spans over 38 years, including consumer class actions for more than two-thirds of that time. I have represented consumers in numerous successful class actions involving a wide variety of claims and

topics from anti-trust, securities, civil rights, defective products, deceptive and unfair trade practices, common law fraud, and the protection of the privacy rights of consumers.

5. I was appointed co-lead counsel in the successful prosecution of the two largest class action cases in the United States: *Fresco v. Automotive Directions, Inc.*, Case No. 03-61063-JEM, and *Fresco v. R.L. Polk,* Case 0:07-cv-60695-JEM (Southern District of Florida). These cases were filed against the world's largest data and information brokers—Experian, R.L. Polk, Acxiom, Reed Elsevier (which owns Lexis-Nexis) and others—to protect the important privacy rights of consumers.

6. I presently serve, or have served in the past, as lead, co-lead, or class counsel in numerous multi-district litigations across the country in a wide variety of areas affecting consumers. For example and to name only a few cases in which I have served in leadership, I presently serve as co-lead counsel in the case of *In re: Capitol One Consumer Data Sec. Breach Litig.*, No. 1:19-md-02915 (E.D. Va.). I have also served as co-lead of the *Home Depot Data Breach*, a member of the five-member overall Executive Committee in the *Target Data Breach*, No. 0:14-md-02522-PAM (Dist. Minn.), a member of the five-member Plaintiffs' Steering Committee in *In re: U.S. Office Personnel Mgmt Data Security Breach Litig.*, 1:15-cv-01321-ABJ (D.D.C.), and a member of the Plaintiffs' Steering Committee in *In re Equifax, Inc. Customer Data Security Breach Litigation*, 1:17-md-2800-TWT (N.D. Ga.). I also served as lead counsel in *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 16-MD-02752-LHK (N.D. Cal.), a case involving a data breach of over 2.9 billion users of Yahoo's email service. The court in that case recently entered final judgment and approved the settlement of the claims of a class of consumers in the United States and Israel.

7. As a result of my experience in litigation against the insurance industry, including class litigation, I served as lead counsel for the insurance regulators for the state of Florida in connection with their investigations of a number of insurance

companies and brokers of allegations of price fixing, bidding rigging, undisclosed compensation and other related conduct, and negotiated a number of settlements with insurance companies and brokers who were the subject of those investigations. These investigations resulted in the recovery of millions of dollars for Florida policyholders and the implementation of changes to the way insurance is sold in Florida and throughout the United States.

8. During my career, I have tried numerous cases in state and federal courts, including one of the largest and longest insurance coverage cases in U.S. history, which was filed in 1991 by The Celotex Corporation and its subsidiary, Carey Canada, Inc. During the seventeen years the case pended, I served as lead counsel for several insurance companies regarding coverage for asbestos and environmental claims. The case was tried in three phases over several years beginning in 1992. I was also lead counsel for these parties in the subsequent appeals that followed a judgment in favor of my clients.

9. As result of my experience in the area of class litigation and ethics, I have served as an expert for The Florida Bar on ethical issues arising in class action litigation.

10. I am currently a member in good standing of The Florida Bar, and of all the bars to which I have been admitted, including the United States Supreme Court, the United States Court of Appeals for the Third, Fifth, Ninth, and Eleventh Circuits, and the United States District Courts of the Southern District of Texas, Northern District of Texas, Western District of Texas, Eastern District of Wisconsin, Middle District of Florida, Southern District of Florida, Northern Ditrict of Florida, Eastern District of Michigan, Centrial District of Illinois and Northern District of Illinois.

11. Throughout the pendency of this case, my co-counsel and I have maintained regular contact with the Plaintiff to discuss with him the prosecution of the case. With the assistance of counsel, Plaintiff has been at the helm of this case and

continues to be focused on the advancement of the interests and claims of the Class over his own interests. He has always been concerned about obtaining a result that was best for the Class. Plaintiff is an adequate class representative with no conflicts of interest.

12. This Action was initiated following Defendants' disclosure that a credit card scraping attack resulted in the disclosure of the names, addresses, payment card numbers, CVV security codes, and credit card expiration dates ("personally identifiable information" or "PII") of TrueFire customers who purchased online guitar lessons from the TrueFire website between August 3, 2019 and January 14, 2020 (the "Data Breach").

13. On April 14, 2020, Plaintiff filed his Class Action Complaint against Defendants in the United States District Court for the Middle District of Florida asserting claims for negligence, invasion of privacy, negligence *per se*, unjust enrichment, declaratory judgment, violation of Florida's Deceptive and Unfair Trade Practices Act, violations of California's Unfair Competition Law, and violation of the California Consumer Privacy Act. (Dkt. No. 1). On May 8, 2020, the parties jointly moved to stay litigation and explore class-wide resolution through mediation. (Dkt. No. 15). Immediately upon learning of the Data Breach, Class Counsel worked vigorously to remedy the harms imposed on the Settlement Class.

14. On May 8, 2020, the parties moved to stay this litigation and explore class-wide resolution through mediation. (Dkt. No. 15). Through an informal exchange of information leading up to the mediation, as well as the parties' breadth of experience litigating data breaches nationwide and in this District, the parties were informed of the pertinent information necessary to engage in and conduct a meaningful mediation to bring resolution to Settlement Class Members.

15. The proposed Settlement was reached following a day-long mediation conducted by Bennett G. Picker of Stradley Ronon Stevens & Young, LLP, on

September 16, 2020. Mr. Pickert was selected as a mediator based upon his reputation and skills in resolving complex cases, including privacy cases of the type at issue here. Prior to his selection in this case, Mr. Picker has successfully mediated data breach class cases that my firm had filed. The parties now wish to fully and finally resolve their dispute on a class-wide basis, pursuant to terms that were proposed and negotiated between them beginning at the mediation with Mr. Picker and finalized by the parties in the weeks following. I can attest that the negotiations between the parties were hard fought, always arms length and were noncollusive.

16. This Settlement Agreement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against Defendants and the Released Parties (as defined in the Settlement Agreement) relating to the Data Breach, by and on behalf of the Plaintiff and Settlement Class Members (as defined in the Settlement Agreement), and any other such actions by and on behalf of any other consumers and putative classes of consumers originating, or that may originate, in jurisdictions in the United States against Defendants relating to the Data Breach.

17. Under the Settlement, subject to its terms and conditions and subject to Court approval, Settlement Class Members are eligible to receive nine (9) months of complimentary TrueFire All Access Subscription Offering, reimbursement of up to $60.00 (3 hours at $20.00 per hour) for Time Spent Remediating Payment Card Issues; and $50.00 per California Sub-class Member for damages under the CCPA.

18. In addition to the monetary compensation provided to class members by the Settlement Agreement, Defendants have implemented, and/or have agreed to implement, and agree to maintain enhanced security measures for five years following approval of the Settlement, including: (1) maintaining current Payment Card Industry compliant status; (2) migrating hosting to Amazon Web Services ("AWS"); (3) engaging an outside vendor to perform two (2) rounds of penetration testing; (4) implementing password handling, requirements, and encryption in line with industry

best practices; (5) implementing protections against SQL injection and Cross Site Scripting attacks; (6) implementing security measures in how employees access systems and administration tools; (7) enabling firewall enhancements; (8) enabling enhancements for Payment Card Industry compliance; (9) enabling management of AWS infrastructure, network and accounts to be in line with security best practices; and (10) staff two senior personnel resources with job responsibilities including the security and stability of Defendants' technology.

19.     Defendants agree to pay all costs associated with providing Class Notice and Settlement Administration, including disbursement of the Settlement benefits.

20.     The parties negotiated Class Counsel's attorneys' fees, costs, and expenses separately and only after the parties had reached an agreement on the benefits afforded to the Settlement Class by the Settlement

21.     Defendants have agreed that Settlement Class Counsel is entitled to seek an award of reasonable attorneys' fees, costs, and expenses for prosecuting this action. Defendants did not object to Settlement Class Counsel's motion for fees and expenses of $156,500.00, inclusive of costs and expenses.

22.     After investigating the facts and carefully considering applicable law, Plaintiff and Class Counsel have concluded that it is in the best interests of the Settlement Class Members to enter into the Settlement in order to avoid the uncertainties of litigation and to assure meaningful and timely benefits to the Settlement Class Members. I, along with the Plaintiff and Class Counsel, respectfully submit that the terms and conditions of this Settlement are fair, reasonable, adequate, and in the best interests of all Settlement Class Members.

23.     Throughout the settlement process, my co-counsel and I carefully weighed with the Plaintiff: (1) the benefits to the Class under the terms of this Settlement Agreement, which provides significant relief to the Class; (2) the relatively small damages which might have been sustained by the Class, the likelihood that in

the absence of a class action consumers would not pursue individual claims, particularly due to the high cost and expense, including the cost of cyber and damage experts to litigate these claims if pursued in individual litigation, and the fact that the small damages would not justify the retention of an attorney, either on an hourly or contingent basis, to pursue the claims individually; (3) the difficulty in proving and calculating those damages; (4) the attendant risks and uncertainty of litigation, as well as the difficulties and delays inherent in such litigation including the challenges to certification of a class; (5) Defendants' vigorous defense of the litigation and continued denial of the claims contained in the Complaint; (6) the desirability of consummating the present Settlement Agreement to ensure that the Class receives a fair and reasonable Settlement; and (7) providing Settlement Class Members prompt relief.

24. In particular, it is my opinion that the present Settlement Agreement provides significant benefits to Class Members.

25. The relief provided by the Settlement is reasonable and adequate, particularly in light of the risks and delay trial and associated appeals. At bottom, Plaintiff faced difficult hurdles certifying a class.

26. The reaction of the Settlement Class to the Settlement here has been extremely positive. There have been 517 claims, no objections, and one opt-out received. Likewise, at present, no objections were received in response to the CAFA notices sent to attorneys general. These are powerful indicia that the Settlement is fair, reasonable, and adequate and deserves final approval. Given my extensive experience with class action settlements, it is my informed opinion that the Notice Program, with all attendant forms and as outlined in the Settlement, makes every effort to ensure that Class Members will be made aware of their right to a recovery under the Settlement.

27. I believe that the relief achieved through the settlement is close to if not the same relief we would have achieved had we taken the case to trial and succeeded.

28.	It is my opinion, and that of Class Counsel, that the settlement is fair, reasonable, and adequate and that the settlement should be given final approval.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 30, 2021 at Tampa, Florida.

By: _____
John A. Yanchunis, Esq.